ROYAL BANK OF CANADA, PLAINTIFF AND APPELLEE, *v.* PORTO RICO CITRUS FRUIT CO., DEFENDANT AND APPELLANT.

APPEAL from the District Court of San Juan, Section 1, in an Action to Recover on a Promissory Note.

No. 2521.—Decided July 12, 1923.

DEBT—PROMISSORY NOTE—PRINCIPAL AND AGENT.—A principal is not liable for the payment of a promissory note to which his name has been subscribed by a person as agent who has no real or apparent authority.

The facts are stated in the opinion.

*Messrs. O. M. Wood* and *Soto Gras & Siaca* for the appellant.

*Messrs. Chas. Hartzell* and *F. Ramírez de Arellano* for the appellee.

MR. JUSTICE HUTCHISON delivered the opinion of the court.

In a suit on a note signed "P. R. Citrus Fruit Company, J. M. Kohn Mgr.," the district court rendered judgment for plaintiff on facts found as follows:

"The case having been tried and the evidence examined, the court arrives at the conclusion that J. M. Kohn was the manager of the Porto Rico Citrus Fruit Company and as such was authorized to collect, sell, draw checks, etc., in the name of the corporation he represented and although he alleges that he was not authorized expressly to sign promissory notes in the name of the corporation of which he was the manager in Porto Rico, nor had he been forbidden to do so, and if he could bind the corporation by drawing checks, we do not see any reason why he could not to do so by signing promissory notes.

"Strayer, in whose favor the promissory note was signed, was a customer of the defendant and it was for this reason that Kohn agreed to sign the promissory note for him as manager of the defendant corporation and deliver it to Strayer, and as Kohn

stated in his testimony that when paying Strayer the sum owed him by the defendant by reason of certain negotiations which existed with the defendant, he asked Strayer whether he had already received the promissory note and that when Strayer answered in the affirmative and said that the promissory note had been mislaid, he accepted this explanation and paid what the defendant owed him.

''From this testimony in connection with the rest of it it is seen that Kohn considered himself sufficiently authorized to make the promissory note and knew that in signing it he had bound the company of which he was the manager.''

At the trial Kohn testified that he was manager of the Bayamón fruit plantation; that as such manager he had charge of the development of the company's fruit; that he was the manager of the farm; that his duties and power consisted in looking after the development of the property and attending to the shipment of fruit; that he had no power to sign notes on behalf of the company; that he told Strayer that he had no power to sign, but Strayer insisted that he had and asked it as a personal favor; that witness did not know exactly why Strayer wanted him to sign; that Strayer came one morning in a great hurry; that the company owed him a certain amount of money; that witness told him he could not do anything at the moment; that Strayer told witness to give him his note and he would arrange the rest; that the note was for the amount owed by the company at the time; that on payment of the amount witness requested the return of the note; that Strayer told witness that the note was past due and had been paid and asked witness why he wanted the note, and said that he (Strayer) had not been able to find it in his desk; that witness was authorized to purchase supplies for the company and the company sent the money to pay for them; often witness deposited the money in his own name and checked against it as his personal account; that at times witness had drawn checks in the name of the company and had that

power, but had no power to sign notes; that the company sent the money to witness who deposited it in the bank and drew against it; that often when the company had no money witness used his own money; that the 4,000 odd dollars paid to Strayer (in full settlement of the company's account and after maturity of the note) included the $1,700 amount of the note; that the company received the supplies covered by the note but they were not purchased with the note; that this was not the only occasion on which witness had signed a note on behalf of the company; that when the company found it necessary to sign a note they gave witness a special power of attorney.

Willis M. Spaulding, secretary and treasurer of the defendant company, testified in substance that no person was authorized to sign notes in the name of the Porto Rico Citrus Fruit Company unless so authorized by the board of directors in each case; that Kohn was manager and superintendent of the company's plantation in Porto Rico; that he had never been authorized to sign notes in the name of the company prior to October 10, 1918; that Kohn was never authorized by the company to sign the note described in the complaint in the name of the company; that the company had never ratified or accepted the signature of Kohn to that note as binding upon the company; that witness had never been requested to ratify the signature of Kohn on said note so as to make it binding on the company; that witness had never been asked to accept or deny the validity of the said note by reason of Kohn's signature; that the Royal Bank of Canada had never had any conversation or correspondence with witness or the defendant company in this matter except that when witness was in Porto Rico early in 1918 the manager of the bank asked witness if the company was going to pay the note, stating that the note had been turned over to them as collateral; that witness answered that the note had been paid once and

the company would certainly refuse to pay it again; that this conversation was with Allen, the manager of the bank; that the duties of the manager of the Porto Rico Citrus Fruit Company's farm in Porto Rico were to manage and superintend the development of this plantation and the production of the company's fruit, which it raises, or in other words the general duties of a farm manager; that no person or persons are authorized under the by-laws to sign notes or any other documents binding the company except as authorized by the board of directors governing each case; that this power is fixed as sole and exclusive under the by-laws in the board of directors; that on or about October 26, 1916, witness was secretary and treasurer and had charge of the main office of defendant company; that witness had no knowledge of the signing of the note for $1,773.18 in favor of Strayer dated April 26, 1916, to cover the price of merchandise bought from Strayer and delivered to the defendant company, nor of the subsequent payment of that amount, but afterwards was informed that the manager had given such a note and had paid it; that up to that time Kohn had not signed notes or other documents for the defendant company on any other occasion. Asked whether or not the defendant company at any time had repudiated the signature of Kohn to notes or other documents for the company, witness answered, "No, they have not taken action one way or the other." Asked whether or not in this particular case the defendant company used or not the goods bought from Strayer and covered by this note, witness answered, "I have no knowledge of it."

The testimony of Fred H. Ferguson, president of the company, is more or less to the same effect except that no communication of any kind had passed between him and the bank.

The note was signed in April, 1916, and was payable two months after date. The Strayer account was paid in

July by a check for $4,640.67 on the American Colonial Bank, which was endorsed by Strayer to the order of the American Colonial Bank for deposit to his account.

There is no evidence to show that any officer of the company ever knew that the note was held by plaintiff as collateral, or even that the note had been signed prior to the date of the conversation between Allen and Spaulding in 1918. That the bank held the note for two years or more after maturity without communicating with the officer or home office, or local resident agent of the company, is a significant circumstance.

Upon this point counsel for the bank say in their brief that:

"Porto Rico Citrus Fruit Company knew of the existence of that promissory note and so much so that Willis M. Spaulding, secretary and treasurer of The Porto Rico Citrus Fruit Company, says in his testimony set out in the record that the promissory note had been paid once by the company and they would not pay it twice

"It was so stated by Spaulding to Allen, general manager at the time of the Royal Bank of Canada, and it was due to this statement that the present suit was brought."

The mere statement by Spaulding that the note had been paid once does not necessarily imply that he knew of the existence of the note prior to the date of that conversation. He may have received his first information in this regard from Allen at the same time when he was told by Allen that the bank held the note as collateral. Even otherwise, he might have learned the facts at any time during the two years that had elapsed after maturity of the note.

The intimation that the note had been paid, coupled with a refusal to pay the same and given as a reason for such refusal, considered in the light of all the circumstances, did not amount to a ratification of the unauthorized action on the part of the farm manager. Literally construed and viewed, as the statement of a technical legal proposition,

the absolute soundness of the conclusion involved may be open to question. Perhaps an answer setting up a defense in the same language would be subject to demurrer. But we cannot concede that such a mistake with reference to the legal effect of the payment made to Strayer, if it be a mistake, constitutes an estoppel to allege the total absence of any authority on the part of the farm manager to sign the note. And if the general rule were otherwise, we might well hesitate to apply it herein, where the effect would be to deprive defendant of such a defense to an action by a third person holding the note as collateral security, brought thereon two years after maturity without previous investigation or inquiry as to such authority or timely notice to the officers or home office, or local resident agent of defendant company as to the existence of plaintiff's interest or claim.

To enumerate all the things that defendant might have done, but has not done, with a view to distinguishing the case at bar from the authorities cited by the bank, would serve no useful purpose. We find none of the elements necessary to bring the instant case within any of the recognized exceptions to the general rule that a principal is not liable on a note to which his name has been subscribed by one purporting to be his agent, but without authority either actual or apparent.

The difference between the power to draw checks in the name of a corporation, after the opening of an account and the depositing of money in the name of the corporation, by an employee who in connection with the management of a farm is authorized to purchase and pay for supplies, and who thereafter checks against such account, and the power to execute promissory notes in the name of such corporation, is too obvious to require serious discussion. The general lines of cleavage between the powers and duties of a farm

manager and those of the general manager of a corporation are equally plain.

In what circumstances a bank would be justified in assuming without investigation that the general manager or resident general manager of a foreign corporation has authority to execute promissory notes in the name of such corporation, is a question that may be determined when it arises.

We find in the record no basis whatever for the conclusion reached by the court below and the judgment appealed from must be

*Reversed.*

Chief Justice Del Toro and Justices Wolf, Aldrey and Franco Soto concurred.